CASE NO: 22-10522-F

_____

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

HUDSON SPECIALTY INSURANCE COMPANY,

Appellant,

v.

CITGO ROOSEVELT, INC., et al.,

Appellees.

_____

On Appeal From The United States District Court
For The Northern District of Georgia, Atlanta Division
Case No. 1:20-cv-02464-LMM

_____

**PRINCIPAL BRIEF OF APPELLANT HUDSON SPECIALTY
INSURANCE COMPANY**

_____

Christopher B. Freeman
Georgia Bar No. 140867
Amanda D. Proctor
Georgia Bar No. 776848
CARLTON FIELDS, P.A.
One Atlantic Center, Suite 3000
1201 West Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone: (404) 815-3400

James Parker-Flynn
Georgia Bar No. 653173
CARLTON FIELDS, P.A.
215 S. Monroe Street
Suite 500
Tallahassee, FL 32301
Telephone: (850) 224-1585

*Counsel for Appellant Hudson Specialty Insurance Company*

## <u>CERTIFICATE OF INTERESTED PERSONS</u><br><u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, counsel for Appellant Hudson Specialty Insurance Company, hereby certifies that the following is a complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party in this case:

(1)  Bryant, Vonciel Tiffany

(2)  Burns, Amy C. M.

(3)  Carlton Fields, P.A.

(4)  Citgo Roosevelt, Inc.

(5)  Dubuis, Valentin H.J.

(6)  Fairfax Financial Holdings Limited ("FFH")

(7)  Freeman, Christopher B.

(8)  Gorby, Michael J.

(9)  Gorby Peters and Associates, LLC

(10) Hicks, Tabitha Renee

(11)  Hudson Insurance Company

(12)  Hudson Specialty Insurance Company

(13)  May, The Honorable Leigh Martin

(14)  Odyssey Group Holdings, Inc.

(15)  Odyssey Reinsurance Company

(16)  Oglesby, Shukran Kyrie Hicks

(17)  Parker-Flynn, James E.

(18)  Proctor, Amanda D.

(19)  Sampson, Thomas G., II

(20)  Thomas Kennedy Sampson & Tompkins, LLC

Respectfully submitted, this 17th day of May 2022.

CARLTON FIELDS, P.A.

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867
Amanda D. Proctor
Georgia Bar No. 776848
1201 West Peachtree Street
Suite 3000
Atlanta, Georgia  30309
Telephone: (404) 815-3400
cfreeman@carltonfields.com
aproctor@carltonfields.com

James Parker-Flynn
Georgia Bar No. 653173

215 S. Monroe Street, Suite 500
Tallahassee, Florida 32301
Telephone: (850) 224-1585
jparker-flynn@carltonfields.com

*Counsel for Appellant Hudson Specialty
Insurance Company*

# STATEMENT REGARDING ORAL ARGUMENT

In its Order, the District Court creates a new rule of law out of whole cloth, finding that an insurer can be equitably estopped to deny coverage when (1) the insurer never agreed to defend its insured in connection with an underlying action; (2) the insurer never authorized counsel to file defensive pleadings on its insured's behalf and, in fact, was unaware of the pendency of a lawsuit naming its insured as a party defendant at the time the insurer first spoke to coverage; (3) the insurer timely notified its insured of its coverage position three business days after the filing of defensive pleadings and the service of denials of request for admission as to liability; and (4) after receiving such notice, the insured expressly agreed to a defense under a bilateral reservation of rights. Appellant respectfully requests oral argument because of the unique factual scenario and the legal implications of this case in the event the District Court's Order were affirmed, which would subvert the reasonable expectations of the parties to an insurance contract and divorce the doctrine of estoppel from its equitable underpinnings.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS   AND CORPORATE
DISCLOSURE STATEMENT ..............................................................C1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS AND AUTHORITIES................................................... v

STATEMENT OF JURISDICTION .................................................... 1

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE ........................................................ 3

I.     Course Of Proceedings And Disposition In The Court Below ........................ 3

II.    Statement Of The Facts ...................................................... 4

       A.    The Policy.............................................................. 4

       B.    The Shooting And Underlying Action................................. 5

       C.    Citgo And Lewis Brisbois Fail To Notify Hudson Of The Amended
             Complaint Naming Citgo As A Party Defendant.............................. 8

       D.    Hudson's Coverage Position And Defense Under Reservation Of
             Rights .............................................................10

       E.    The District Court's Order ...........................................12

III.   Standard Of Review .......................................................14

SUMMARY OF THE ARGUMENT ................................................15

ARGUMENT...................................................................19

I.     Standard Of Review .......................................................19

II.   The District Court Erred In Determining Hudson's Coverage Position Letter Was Untimely As A Matter of Georgia Law And, Thus, Ineffective To Avoid Estoppel. ...................................................................................20

     A.   Georgia Law Requires "Timely" Notice Of A Coverage Position And Permits Notice Within A Reasonable Period Of Time After The Assumption Of The Defense ............................................................21

          1.   Under Georgia law, the timeliness of a reservation of rights is determined by whether, at the time it is given, the course of litigation has been "irrevocably fixed" ......................................21

          2.   The actions taken by Lewis Brisbois were non-prejudicial to Citgo as a matter of undisputed fact ...........................................26

          3.   The actions taken by Lewis Brisbois were non-prejudicial to Citgo as a matter of law and, thus, fails to support a legal presumption of prejudice ..........................................................27

     B.   An Insurer's Duty To Speak To Coverage Is Tied To Notice Of A Lawsuit Against Its Insured As A Party Defendant ...........................29

III.  The District Court Erred By Failing To Address The Effect Of Citgo's Acceptance Of A Defense Under A Reservation Of Rights ...........................31

IV.   The District Court Erred In Determining That Hudson Initially Assumed Citgo's Defense Because Hudson Did Not Agree To Defend Against, Or Even Know About, The Lawsuit Before It Sent Its Coverage Position Letter.........36

     A.   Hudson Was Unaware Of The Pendency Of A Suit Against Citgo At The Time It Issued Its Coverage Position Letter, Precluding A Finding That It Assumed Citgo's Defense ....................................................36

     B.   *Smoot* Is Inapposite ..........................................................................39

     C.   In The Absence Of An Agency Relationship With Lewis Brisbois To "Execute [Hudson's] Promises" To Citgo, There Is No Estoppel Because Hudson Never Communicated To Citgo It Would Assume The Defense Of The Underlying Action ..........................................41

     D.   The District Court Improperly Weighed Evidence On Summary Judgment .........................................................................................42

CONCLUSION.................................................................................................43

CERTIFICATE OF SERVICE........................................................................ 1

# TABLE OF CITATIONS AND AUTHORITIES

**Page(s)**

## CASES

*American Family Ins. Co. v. Almassud*,
  413 F. Supp. 3d 1292 (N.D. Ga. 2019)......................................................32, 33

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).......................................................... 19, 20, 43

*Andrews v. Ga. Farm Bureau Mut. Ins. Co.*,
  487 S.E.2d 3 (Ga. Ct. App. 1997) ....................................................15

*BBL-McCarthy, LLC v. Baldwin Paving Co.*,
  646 S.E.2d 682 (Ga. Ct. App. 2007) ..............................................30

*Berbridge v. Sam's E., Inc.*,
  728 F. App'x 929 (11th Cir. 2018)....................................................19

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) (en banc) ......................................30

*Bowen v. Ga. Farm Bur. Mut. Ins. Co.*,
  293 S.E.2d 8 (Ga. Ct. App. 1982) ..............................................22, 32

*Canal Indem. Co. v. Bradley*,
  No. 1:12-cv-2206-WSD, 2014 WL 1292459 (N.D. Ga. Mar. 28, 2014)..........22

*Collins v. Grafton, Inc.*,
  435 S.E.2d 37 (Ga. 1993)...................................................... 36, 41, 42

*Dyer v. Lee*,
  488 F.3d 876 (11th Cir. 2007)..........................................................14

*Fire Ins. Exchange v. Fox*,
  423 N.W.2d 325 (Mich. Ct. App. 1988)..........................................23

*Gibson v. Preferred Risk Mut. Ins. Co.*,
  467 S.E.2d 334 (Ga. 1996) (Benham, C.J., dissenting)....................22

*Hoover v. Maxum Indem. Co.*,
  730 S.E.2d 413 (Ga. 2012)...............................................................30

*Ins. Co. of N. Am. v. Kyla, Inc.*,
 388 S.E.2d 530 (Ga. Ct. App. 1989) ........................................................23, 24

*Jones v. Georgia Cas. & Surety Co.*,
 78 S.E.2d 861 (Ga. Ct. App. 1953) ...............................................................24

*Lextron, Inc. v. Travelers Cas. & Surety Co. of Am.*,
 267 F. Supp. 2d 1041 (D. Colo. 2003) ...........................................................23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986).........................................................................................19

*\*Moody v. Pa. Millers Mut. Ins. Co.*,
 263 S.E.2d 495 (Ga. Ct. App. 1979) ..................................................22, 32, 34

*Patton v. Triad Guar. Ins. Corp.*,
 277 F.3d 1294 (11th Cir. 2002)......................................................................19

*\*Preferred Risk Mut. Ins. Co. v. So. Guar. Ins. Co. of Ga.*,
 353 S.E.2d 590 (Ga. Ct. App. 1987), *rev'd on other grounds by*,
 359 S.E.2d 665 (Ga. 1987).......................................................................22, 28

*Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*,
 319 S.E.2d 445 (Ga. 1984)................................................................................9

*Richmond v. Georgia Farm Bureau Mut. Ins. Co.*,
 231 S.E.2d 245 (Ga. Ct. App. 1976) ..................................................27, 28, 35

*Simon v. Maryland Cas. Co.*,
 353 F.2d 608 (5th Cir. 1965)....................................................................29, 30

*Smoot v. State Farm Mut. Auto. Ins. Co.*,
 299 F.2d 525 (5th Cir. 1962)....................................................................39, 40

*St. Paul Fire and Marine Ins. Co. v. Children's Hosp. Nat'l Med. Ctr.*,
 670 F. Supp. 393 (D.D.C. 1987) ....................................................................30

*State Farm Mut. Auto. Ins. Co. v. Wheeler*,
 287 S.E.2d 281 (Ga. Ct. App. 1981) ........................................................22, 32

*State Farm Mut. Auto. Ins. Co. v. Anderson*,
 123 S.E.2d 191 (Ga. Ct. App. 1961) ..............................................................35

*Underwriters at Lloyds v. Denali Seafoods, Inc.*,
  927 F.2d 459 (9th Cir. 1991).............................................................23

*Warrior Tombigbee Transp. Co. v. M/V Nan Fung*,
  695 F.2d 1294 (11th Cir. 1983).................................................19, 43

*\*Wellons, Inc. v. Lexington Ins. Co.*,
  566 F. App'x 813 (11th Cir. 2014)..................................................*passim*

*Winters v. GEICO*,
  209 S.E.2d 32 (Ga. Ct. App. 1974) ................................................24

*\*World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*,
  695 S.E.2d 6 (Ga. 2010)...................................................................*passim*

## STATUTES

28 U.S.C. § 1291.................................................................................1

28 U.S.C. § 1332.................................................................................1

28 U.S.C. § 1332(a) ...........................................................................1

O.C.G.A. § 9-11-12 .........................................................................26

O.C.G.A. § 9-11-12(b)......................................................................22

O.C.G.A. § 9-11-15(a) ......................................................................26

O.C.G.A. § 10-6-51 ..........................................................................40

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) .........................................21

Eleventh Cir. R. 28-5 ..........................................................................3

Eleventh Circuit Rule 26.1-1..............................................................1

Fed. R. Civ. P. 56(a) ........................................................................19

Federal Rule of Appellate Procedure 26.1........................................1

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Georgia had subject-matter jurisdiction over the instant declaratory judgment action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Appellant and Appellees and the amount in controversy, exclusive of interest and costs, exceeds the sum required by 28 U.S.C. § 1332. The United States Court of Appeals for the Eleventh Circuit has jurisdiction of this appeal under 28 U.S.C. § 1291 because it is an appeal from a final decision of the United States District Court for the Northern District of Georgia that was entered on February 3, 2022. Appellant's Notice of Appeal was timely filed on February 14, 2022.

## STATEMENT OF THE ISSUES

I. Whether the District Court erred in determining that Hudson Specialty Insurance Company's ("Hudson") coverage position letter was untimely as a matter of Georgia law and, thus, insufficient to avoid a finding of coverage by estoppel.

    A. Whether the District Court erred in finding that Hudson's duty to speak to coverage was triggered prior to the existence of a suit against its insured, Citgo Roosevelt, Inc. ("Citgo"), as a party defendant.

B. Whether the District Court erred in determining that a reservation of rights is "untimely" as a matter of law if it is presented three business days following the filing of the insured's answer.

C. Whether the presumption of prejudice announced by the Georgia Supreme Court in *World Harvest* is limited to analogous circumstances in which the course of litigation has been "irrevocably fixed."

II. Whether the District Court erred in failing to address the legal effect of Citgo's acceptance of a defense under a reservation of rights on its claim of estoppel.

III. Whether the District Court erred in determining that Hudson assumed the defense of Citgo.

A. Whether the District Court erred in determining Hudson was bound by the conduct of Lewis Brisbois outside the express scope of counsel's limited agency relationship with Hudson as to the Underlying Action.

B. Whether the District Court improperly made material factual determinations when it found Hudson had authorized counsel to defend Citgo at the time Citgo's Answer was filed.

# STATEMENT OF THE CASE

## I.   COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

Appellant Hudson Specialty Insurance Company brought this lawsuit against Appellees Citgo and Tabitha Renee Hicks ("Hicks") (Citgo and Hicks, collectively, "Appellees") on June 9, 2020, in the United States District Court for the Northern District of Georgia, Atlanta Division. (1–1-17.)[1] Hudson's Complaint sought a declaratory judgment that it has no obligation to defend or indemnify Citgo under a commercial general liability policy issued by Hudson to Citgo, for any claims, losses, or other damages or liabilities asserted by Hicks in the case styled *Tabitha Renee Hicks, as next friend of Shukran Kyrie Hicks Oglesby, et al. v. Citgo Roosevelt, Inc., et al.*, Case No. 18EV000638, pending in the State Court of Fulton County, Georgia (the "Underlying Action"). (*Id.*) Both Citgo and Hicks subsequently answered, and Citgo also filed counterclaims against Hudson for breach of the duty of good faith/fair dealing and for bad faith. (7; 15.) Hudson's motion to dismiss Citgo's counterclaims was granted by the District Court on December 21, 2020, and is not the subject of the instant appeal. (18; 43.)

---

[1] Pursuant to 11th Cir. R. 28-5, citations to the record are formatted as follows: (Docket Entry Number–Page Number(s)). If the Docket Entry Number is hyphenated, it is placed within additional parentheses, e.g. ((43-9) – 4). Citations to deposition testimony are formatted as follows: (Docket Entry Number–Page Number:Line(s)).

On July 15, 2021, Hudson and Appellees filed cross-motions for summary judgment on Hudson's claim for declaratory judgment. (70, (70-1), (70-2); 71, (71-1), (71-2), (71-3) to (71-7); 77, (77-1), (77-2), (77-3) to (77-41).) On February 3, 2022, the District Court determined that Hudson was estopped to deny coverage for the Underlying Action, denied Hudson's motion for summary judgment, and granted Citgo's cross-motion for summary judgment. (100–1-22.)[2] The District Court entered a judgment dismissing Hudson's declaratory judgment action with prejudice. (101.)

## II.  STATEMENT OF THE FACTS

### A.    The Policy

Hudson issued Policy Number HBD 10018718 to Citgo, as the Named Insured, for the policy period of June 20, 2016 to June 20, 2017, which provided commercial general liability coverage for "bodily injury" caused by an "occurrence," defined in relevant part as an "accident," subject to the policy's terms, conditions and exclusions (the "Policy"). ((1-2)–5, 14.) The insurance afforded by the Policy excludes from coverage claims for "'bodily injury' … [a]rising out of the … use of … firearms and/or 'weapons'" (the "Firearms Exclusion"). (Id. at 52.) Further, the Policy bars coverage for "[a]ny claim arising out of an assault and/or a

_____

[2] The District Court denied Hicks' motion for summary judgment on the basis of her lack of standing as a third party claimant, which Hicks has not appealed. (100–6-8.)

battery." (*Id.* at 50.) In addition, the Policy contains several notice conditions, which provide, separately and severally, that Citgo must, as a condition precedent to coverage: (1) provide notice to Hudson "as soon as practicable of an 'occurrence' … which may result in a claim"; (2) provide notice to Hudson "as soon as practicable" if "a claim is made or 'suit' is brought *against any insured*"; and (3) "*[i]mmediately* send [Hudson] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'" (the "Notice Provisions"). (*Id.* at 23-24 (emphasis added).)

## B.    The Shooting And Underlying Action

On October 6, 2016, Kenneth Oglesby was shot and killed while pumping gas at a station located at 3565 Roosevelt Highway, College Park, Fulton County, Georgia (the "Station" and the "Shooting," respectively).  (1-1 ¶ 1.)  Citgo was notified or otherwise became aware of the Shooting in October 2016 but did not provide notice of it to Hudson at that time.  ((71-3)–2.)

Thereafter, on February 8, 2018, Hicks filed the Underlying Action against the W.W. Fowler Family Limited Partnership, W.W. Fowler Oil Company, 3565 Roosevelt, LLC, and Chevron U.S.A. Incorporated.  (1-1.)   Hicks did not name Citgo as a defendant in the initial Complaint filed in the Underlying Action.  (*Id.*) Further, Hicks alleged in her Complaint that Mr. Oglesby had been "shot and killed at the *Chevron* Gas Station[.]"  ((1-1)–2 ¶ 1 (emphasis added).)

On March 21, 2018, Citgo, through its personal counsel, first provided notice to Hudson of the Shooting that occurred over seventeen months prior. ((71-4)–3, 10.) Subsequently, on or about March 29, 2018, Hudson received a letter from Citgo's counsel enclosing a copy of the complaint filed in the Underlying Action (the "Notice Letter"). (*Id.* at 3, 12-13.) According to the Notice Letter, Citgo was providing Hudson notice of a "*potential* claim against [it]" in connection with the Underlying Action. (*Id.* at 12 (emphasis added).) Citgo's counsel informed Hudson that Citgo was "not specifically named in the suit and ha[d] not been served [with process] at th[at] point as a defendant." (*Id.* at 12-13.)

The Notice Letter indicated further that Travelers Insurance Company demanded that Citgo defend Travelers' insured, W.W. Fowler Family Limited Partnership ("Fowler"), in the Underlying Action pursuant to the terms of a lease agreement between Citgo and Fowler concerning the Station. (*Id.*) Citgo stated that Fowler's response to the complaint in the Underlying Action would be due in thirty days from service but that Citgo was unaware of when Fowler was served and, by extension, when Fowler's answer would be due. (*Id.*)

On March 21, 2018, in response to the third party tender, Hudson immediately engaged Brantley Rowlen of Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois"). (74–21-22.) Hudson initially gave Lewis Brisbois the specific and limited instruction to "make sure default not taken while [Hudson] confirm[ed]

coverage" for the Underlying Action. ((71-4)–4 ¶ 8; *id.* at 9.) Materially, at that time, Citgo was not a defendant in the Underlying Action. Lewis Brisbois acknowledged the assignment on March 22, 2018. ((71-4)–30.) There were no further communications between Hudson and Lewis Brisbois until April 6, 2018.

On April 3, 2018, Hudson's coverage counsel reported its opinion that, as to Citgo, "there [was] no coverage" presented by the facts alleged in the Complaint in the Underlying Action, which did not name Citgo as a party defendant. ((70-1)–55.) Hudson responded on April 6, 2018, that it would be instructing Lewis Brisbois to "stand down." ((77-27).) That same day, Hudson informed Lewis Brisbois that Fowler did not qualify as an additional insured under the terms of the Policy, and, thus, Hudson "will be denying any obligation to defend." ((71-4)–29.) Hudson further specifically instructed Lewis Brisbois "to close this one down." (*Id.*) As of April 6, 2018, there still was no lawsuit pending against Citgo as a party defendant and, thus, Lewis Brisbois understood Hudson's instruction to mean that Hudson "may not be offering coverage to . . . Citgo Roosevelt[,]" and that "there might not be another defense obligation from Hudson's perspective" because "they didn't have an insured in the . . . lawsuit." (76–34:18-37:17.)

Later that same day, Lewis Brisbois informed Hudson that an amended complaint would be forthcoming naming Citgo as a defendant in the Underlying Action. ((71-4)–29.) Based on that information, Hudson then gave Lewis Brisbois

the limited direction to "monitor for the amended complaint." ((71-4)–4 ¶ 10.) Mr. Rowlen of Lewis Brisbois understood Hudson's instruction to mean "keep an eye on things and report back" and "wait and see when the amended complaint gets filed." (76–78:21-79:8.)

## C. Citgo And Lewis Brisbois Fail To Notify Hudson Of The Amended Complaint Naming Citgo As A Party Defendant

On April 12, 2018, the trial court in the Underlying Action entered an order substituting Citgo as a party defendant, and, without notice to Hudson of this development, Lewis Brisbois agreed to accept service on Citgo's behalf. ((84-3); (84-4).) Although Citgo was obligated under the Policy, as a condition precedent to coverage, to "immediately" forward any "summonses or legal papers received in connection with the claim or 'suit[,]'" it similarly failed to notify Hudson that the "potential claim" as to which Citgo previously provided notice (over seventeen months after the Shooting) had become a pending lawsuit against it. Consequently, Hudson was unaware of the pendency of a lawsuit against its insured, and the evidence is uncontroverted that Hudson never informed Citgo that it would defend it in connection with the Underlying Action. ((71-4)–5-6;(87-3)–2.)[3]

---

[3] As discussed, *infra*, Hudson later offered a defense to Citgo under an express reservation of rights on August 10, 2018, which Citgo, through its independent counsel, acknowledged and accepted. ((71-4) – 3, 9.)

Despite Hudson's express instruction to Lewis Brisbois on April 6, 2018, to "close this one down," which preceded Citgo being substituted as a party defendant, and its limited directive later that day to merely "monitor" for the filing of an amended complaint naming Citgo as a defendant, Lewis Brisbois took the following actions in the Underlying Action without the knowledge of, participation of, or authorization from Hudson: (1) acknowledged/waived service on behalf of Citgo on April 9, 2018; (2) filed Citgo's Answer and Defenses on April 27, 2018, in which all liability was denied; (3) filed a notice of non-party fault on April 27, 2018; and (4) responded to Requests for Admission on behalf of Citgo on April 27, 2018, in which all liability was denied. ((71-4)–5; 76–92:2-11.)[4]

Lewis Brisbois made no effort to inform Hudson of these actions until Friday, April 27, 2018 – the day on which the latest of these actions (*i.e.*, the answer and service of discovery responses) occurred – when it sent an email to Hudson's claim representative, Miguel Alvarez. ((71-4)–5, 33-34.) Mr. Alvarez, however, had taken an unplanned personal day and was not in the office on April 27, 2018. (74–114:10-

---

[4] Although Lewis Brisbois also filed a notice of appearance as counsel for Citgo and later consented to a joint motion to substitute Citgo as a party defendant – all without the knowledge of or approval by Hudson – these actions preceded Hudson's express limitation of Lewis Brisbois' authority to that of monitoring counsel. ((71-4)–5; 76–92:2-11.) Regardless, as a matter of law, such limited actions do not give rise to an estoppel to deny coverage. *See Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*, 319 S.E.2d 445, 446-47 (Ga. 1984) (entry of appearance insufficient to create estoppel).

116:3.) As such, it is undisputed that Hudson was unaware of these developments, including Citgo having been named as a party defendant in the Underlying Action, prior to Lewis Brisbois filing the answer and responding to Hicks' requests for admission on April 27, 2018. ((71-4)–5.) In fact, Lewis Brisbois did not provide Hudson with a copy of the filed answer and served discovery responses until May 22, 2018. ((71-4)–6, 43.)

**D. Hudson's Coverage Position And Defense Under Reservation Of Rights**

Three business days later, on May 2, 2018, Hudson denied coverage for the Underlying Action as to Citgo because the Shooting, and the allegations asserted in the Underlying Action related thereto, did not fall within the Policy's grant of coverage for "bodily injury" resulting from an "accident." ((71-4)–6, 36-41.) Hudson also denied coverage because the Firearms Exclusion, among other exclusions, applied to bar coverage for the claims asserted in the Underlying Action. (*Id.*) In addition, Hudson reserved its right to deny coverage on the additional basis that Citgo failed to comply with the Notice Conditions by not providing notice of the Shooting until over seventeen months after the alleged loss. (*Id.*)

The coverage position letter Hudson sent on May 2, 2018, confirms Hudson was unaware of the pendency of a lawsuit against Citgo as a party defendant, and any actions taken in the defense of Citgo, at the time it denied coverage: "[A]lthough

Citgo … is not currently named as a defendant, [Citgo] expects that it soon will be."[5] ((71-4)–36); *see also* (71-4)–6 ¶ 14 ("At the time the disclaimer was reviewed and approved [May 2, 2018], I was still unaware of the actions taken by Lewis Brisbois . . . , including the fact that Citgo had been substituted as defendant in the Underlying Action."); 74–132:16-22.) Hudson's coverage position letter also makes clear that its coverage evaluation as to Citgo was not complete in the absence of Hudson's receipt of a complaint naming Citgo as a defendant, which had not occurred as of the date on which the letter was sent. ((71-4)–40) ("The Suit does not name [Citgo] as a defendant and, thus, there is presently no 'suit' to defend or potential damages that [Citgo] might become 'legally obligated to pay as damages . . . .'").) Hudson then requested that Citgo "advise [Hudson] immediately if Citgo has been served with a summons and complaint in connection with the [Underlying Action]." (*Id.*) That same day, Hudson advised Lewis Brisbois that it "[would not] be *picking up the defense* [of Citgo]." ((71-4)–43-44 (emphasis added).)

On July 19, 2018, Citgo disputed Hudson's coverage position and contended – notwithstanding the above facts – Hudson had waived its coverage defenses by allegedly undertaking Citgo's defense without first reserving its rights under the Policy. ((71-4)–6, 70-72.) Citgo demanded that Hudson "immediately take over the

---

[5] Although the May 2, 2018 letter was prepared by counsel, on Hudson's behalf, Mr. Alvarez reviewed and approved the letter on the day it was sent. ((71-4)–6.)

defense" of the Underlying Action.  (*Id.*)  Thereafter, by letter dated August 10, 2018, Hudson agreed to withdraw its denial and to defend Citgo subject to a full reservation of rights.  (71-4) – 6, 74-79.)  In the August 10th reservation of rights letter, Hudson specifically informed Citgo that, although Lewis Brisbois "did accept service and file an Answer and Affirmative Defenses on behalf of Citgo Roosevelt on April 27, 2018, such action was taken without instruction or approval from Hudson, who had previously instructed the firm to close its file."  (*Id.* at 77.)

With knowledge that Hudson had not directed Lewis Brisbois' actions and of Hudson's coverage position, Citgo, through its independent coverage counsel, nevertheless expressly acknowledged and agreed to Hudson's provision of a defense under a mutual reservation of rights on August 21, 2018.  ((71-4)–6, 81-82.)  Further, when presented with other options, including the use of its own independent counsel, Citgo agreed to have Lewis Brisbois defend it in the Underlying Action.  ((71-7)–3, 5-6.)

### E.    The District Court's Order

Following the filing of Hudson's complaint for declaratory judgment, Hudson and Appellees filed cross-motions for summary judgment on Hudson's claim.  (70, (70-1), (70-2); 71, (71-1), (71-2), (71-3) to (71-7); 77, (77-1), (77-2), (77-3) to (77-41).)  Hudson argued that the plain language of the Policy barred coverage for the Underlying Action, while Appellees contended that Hudson was estopped to deny

coverage because it allegedly assumed Citgo's defense without first reserving its rights to deny coverage. (*Id.*) Despite the above facts, the District Court entered an Order on February 3, 2022, in which it denied Hudson's motion for summary judgment and granted Citgo's cross-motion for summary judgment. (100.) The District Court found that by not speaking to coverage until after Citgo's defense had begun, Hudson was estopped to deny coverage based on the Georgia Supreme Court's holding in *World Harvest Church, Inc. v. GuideOne Mutual Insurance Company*, 695 S.E.2d 6 (Ga. 2010). Specifically, the court held that by initially engaging Lewis Brisbois to "make sure default not taken while [Hudson] confirm[ed] coverage" on March 21, 2018, in response to the third party tender by Fowler, Hudson had assumed *Citgo's* defense as a matter of law as of that date. (100–15-20.)

Although it was uncontroverted that (1) Hudson never agreed to defend Citgo, (2) Hudson expressly limited the engagement of Lewis Brisbois on April 6, 2018 (prior to Citgo being named as a party defendant and served with process), and (3) Lewis Brisbois thus acted, as the court acknowledged, "without the requisite authority," the District Court deemed these material facts a "communication or management issue[]" between Hudson and Lewis Brisbois for which Citgo should not bear the burden. (100–18-19.)

Additionally, the District Court found that Hudson's May 2, 2018 coverage position letter was untimely and ineffective because – without the knowledge of or authorization from Hudson, who had demanded that the firm "close this one down" on April 6, 2018 – Lewis Brisbois had later accepted service of process for Citgo and, on April 27, 2018, had filed an answer and served responses to requests for admission on Citgo's behalf.  (100–10-13.)  Despite the fact that all available defenses were raised and all liability denied, the District Court found these actions were "functionally irreversible" such that the presumption of prejudice announced in *World Harvest* applied.  (100–13-14.)

Accordingly, because it found Hudson had assumed Citgo's defense without allegedly giving timely notice of its reservation of rights, the District Court concluded Hudson was estopped from asserting non-coverage.  The District Court did not acknowledge or address Citgo's ultimate acceptance of a defense under an express reservation of rights in August 2018, and the effect of such acceptance on Citgo's claim of estoppel.  Further, the District Court did not reach the issue of non-coverage under the express terms of the Policy.

## III.  STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of summary judgment, drawing all facts and inferences in the light most favorable to [the nonmovant]." *Dyer v. Lee*, 488 F.3d 876, 878 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

Although the District Court did not reach the issue, Appellees do not and cannot contend that there is coverage for the Underlying Action under the express terms of the Policy.[6] Thus, the issue presented is whether Hudson is estopped to deny coverage for the Underlying Action.

As a general rule under Georgia law, neither waiver nor estoppel can create liability that does not otherwise exist under the insurance contract. *Andrews v. Ga. Farm Bureau Mut. Ins. Co.*, 487 S.E.2d 3, 4 (Ga. Ct. App. 1997). A narrow exception to this general rule exists when "the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of non-coverage." *Wellons, Inc. v. Lexington Ins. Co.*, 566 F. App'x 813, 821 (11th Cir. 2014) (quoting *World Harvest*, 695 S.E.2d at 9). However, "[t]he insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position." *Id.* In connection with its finding that Hudson was estopped to deny coverage for the Underlying Action, the District Court committed several errors.

---

[6] Neither Citgo nor Hicks responded to Hudson's argument that there is no coverage for the Underlying Action under the plain language of the Firearms Exclusion. (*See* 89; 90.) Thus, there was no opposition to this aspect of Hudson's motion for summary judgment. *Chadwick v. Bank of Am., N.A.*, 616 F. App'x 944, 949 (11th Cir. 2015).

First, the District Court ignored key precedent regarding what constitutes a "timely" reservation of rights. The court misapprehended the scope of the holding in *World Harvest* and the rationale supporting it, relating to circumstances in which the course of litigation has been "irrevocably fixed" by a defense of substantial length and substance. Georgia authority makes clear that the filing of answer on an insured's behalf (and taking other initial actions to avoid potential prejudice to an insured) will not support an estoppel if the insurer reserves it rights reasonably soon thereafter because the insured is protected, not prejudiced, by this action.

By concluding that a reservation of rights must be sent *before* an insurer undertakes the defense of its insured, the District Court erred by applying a bright-line test that has no support under Georgia law and was not announced by the Georgia Supreme Court in *World Harvest*. The court compounded its error by concluding that the timeliness of Hudson's coverage position letter was measured from the time it received notice of a potential claim, as opposed to when Hudson became aware of a suit pending against its named insured and, thus, had a duty to speak to coverage.

Second, the District Court erred in failing to acknowledge Citgo's ultimate acceptance of a defense under an express reservation of rights and the effect of that acceptance. With knowledge of Hudson's contention that it had not directed Lewis Brisbois' actions and of Hudson's coverage position, Citgo, through its independent

coverage counsel, expressly acknowledged and agreed to Hudson's provision of a defense under a mutual reservation of rights. Further, when presented with other options, including the use of its own independent counsel, Citgo agreed to have Lewis Brisbois defend it in the Underlying Action. On these undisputed facts, Citgo cannot claim to have been prejudiced as a matter of law. The District Court failed to even address this argument.

Finally, the District Court also erred by determining that Hudson assumed the defense of Citgo in the days preceding its May 2, 2018 disclaimer of coverage. Hudson never offered or agreed to defend Citgo at any time prior to its disclaimer of coverage. Moreover, Hudson expressly limited its engagement with Lewis Brisbois on April 6, 2018, and authorized the firm thereafter only to "monitor for an amended complaint" naming Citgo as a party defendant. Hudson's revocation of the authority of Lewis Brisbois to serve as counsel (in the event necessary) preceded: Citgo being substituted as a party defendant on April 12, 2018; Lewis Brisbois' acceptance of service of process on behalf of Citgo; the filing of Citgo's answer on April 27, 2018; and the service of Citgo's responses to Hicks' requests for admission that same day. In fact, Hudson was unaware Citgo was even a named defendant in the Underlying Action at the time Lewis Brisbois filed a defensive pleading on its behalf, as neither Citgo nor Lewis Brisbois notified Hudson of the amended complaint that first asserted claims against Citgo.

Consequently, the District Court erred as a matter of law by concluding that Hudson was bound by the conduct of Lewis Brisbois outside the express scope of its limited agency. In the face of uncontroverted evidence that Hudson expressly curtailed Lewis Brisbois' authority in connection with the Underlying Action (i.e., to act as monitoring counsel) prior to Citgo being named as a party defendant, the court exceeded its authority on summary judgment by weighing the evidence and determining that an unspecified "longstanding relationship" between Hudson and Lewis Brisbois nevertheless provided the firm "with authority in a way that binds [Hudson]." (100–19.)

In sum, an insurer cannot unequivocally "assume and conduct" a defense that it never offered and of which it was entirely unaware. Hudson never assumed and conducted Citgo's defense prior to speaking to coverage, and its coverage position letter – sent three business days after Hudson was even arguably first informed of a suit pending against its insured – was timely and effective as a matter of law. The District Court's Order should be reversed.

For the foregoing reasons, there is no legal nor factual basis for the District Court's conclusion that Hudson was estopped to deny coverage.

# ARGUMENT

## I.    STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The district court must view all evidence and draw reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.,* 277 F.3d 1294, 1296 (11th Cir. 2002). The court, however, is only required to draw reasonable inferences. *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) (citing *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982)).

Further, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)*; see also Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1298 (11th Cir. 1983) (district court erred in resolving factual disputes on summary judgment by weighing the evidence). There "is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,*

477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## II. THE DISTRICT COURT ERRED IN DETERMINING HUDSON'S COVERAGE POSITION LETTER WAS UNTIMELY AS A MATTER OF GEORGIA LAW AND, THUS, INEFFECTIVE TO AVOID ESTOPPEL.

In *World Harvest*, the Georgia Supreme Court recognized that although the general rule is that neither waiver nor estoppel can create liability that does not otherwise exist under the insurance contract, there is a narrow exception that applies where "the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of non-coverage." *Wellons, Inc. v. Lexington Ins. Co.*, 566 F. App'x 813, 821 (11th Cir. 2014) (quoting *World Harvest*, 695 S.E.2d at 9). "The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position." *Wellons*, 566 F. App'x at 821 (emphasis added).

The District Court erroneously held that: "It is necessary that a reservation of rights notice be timely in order for it to be effective, but that will not be sufficient to prevent estoppel if the insurer has already assumed the insured's defense." (100–12.) Thus, the court's interpretation of Georgia precedent is that a reservation of rights is ineffective unless it is given *before* the insurer assumes the defense of its insured. This interpretation, however, is inconsistent with prior Georgia precedent.

**A. Georgia Law Requires "Timely" Notice Of A Coverage Position And Permits Notice Within A Reasonable Period Of Time After The Assumption Of The Defense**

There is nothing in the *World Harvest* opinion or Georgia law that mandates an insurer speak to coverage "before" assuming and conducting a defense, such that its failure to do so results in an estoppel to deny coverage. Rather, as stated explicitly in *World Harvest*, an "insurer *can avoid estoppel* by giving *timely* notice of its reservation of rights which fairly informs the insured of the insurer's position." 695 S.E.2d at 9 (emphasis added); *see also Wellons,* 566 F. App'x at 821.

"Timely" means "in good time" or "seasonable" – the latter of which is defined as "within a reasonable time." Black's Law Dictionary (11th ed. 2019), "timely," "seasonable." It does not mean "before" – a fact borne out by Georgia case law. The requirement of "timeliness" thus strikes a balance between the general rule that the scope of coverage cannot be enlarged by waiver or estoppel and the potential for prejudice to an insured when an insurer defends it in a substantial manner for a significant period of time without notice of possible non-coverage.

**1. Under Georgia law, the timeliness of a reservation of rights is determined by whether, at the time it is given, the course of litigation has been "irrevocably fixed"**

Accordingly, courts applying Georgia law conclude that there is no prejudice to an insured as a matter of law, and thus no estoppel, when a reservation of rights

is given reasonably soon after the filing of an answer on the insured's behalf.[7] *See,*

*e.g.*, *Moody v. Pa. Millers Mut. Ins. Co.*, 263 S.E.2d 495, 496 (Ga. Ct. App. 1979)

(no estoppel as a matter of law where insured was presented with reservation of

rights letter sixteen days after the filing of an answer on his behalf); *Bowen*, 293

S.E.2d at 9 (no estoppel as a matter of law where undated non-waiver agreement

may have been presented after an answer had been filed); *Preferred Risk Mut. Ins.*

*Co. v. So. Guar. Ins. Co. of Ga.*, 353 S.E.2d 590, 592 (Ga. Ct. App. 1987) (insurer

not estopped from asserting defense of non-coverage when it presented insured with

reservation of rights letter one day after filing answer on her behalf), *rev'd on other*

*grounds by*, 359 S.E.2d 665 (Ga. 1987)*; see also Canal Indem. Co. v. Bradley*, No.

1:12-cv-2206-WSD, 2014 WL 1292459, at *2, *5 n.4 (N.D. Ga. Mar. 28, 2014)

---

[7] Georgia law provides that, for the purposes of determining whether a reservation of rights is timely in connection with an insurer's assumption of its insured's defense, "the commencing point of [a] defense [is] when formal pleadings [are] filed." *Gibson v. Preferred Risk Mut. Ins. Co.*, 467 S.E.2d 334, 336 (Ga. 1996) (Benham, C.J., dissenting) ("Although Preferred Risk began settlement negotiations, retained outside counsel for Gibson, and obtained an extension of time to file the answer, these actions do not constitute a 'defense'; the commencing point of the defense was when formal pleadings were filed."); *see also Bowen v. Ga. Farm Bur. Mut. Ins. Co.*, 293 S.E.2d 8, 9 (Ga. Ct. App. 1982) (analyzing whether non-waiver agreement was "timely" against the timing of an insurer's assumption of its insured's defense "*by filing an answer*") (emphasis added); *State Farm Mut. Auto. Ins. Co. v. Wheeler*, 287 S.E.2d 281, 283-84 (Ga. Ct. App. 1981) (there was "no evidence which would support a finding that [the insurer] had ever 'assumed' the defense of the tort action *by filing defensive pleadings*") (emphasis added). Indeed, as a matter of Georgia civil practice, it is through its answer that a party first presents its defenses, and it is the filing of an answer that begins the discovery period. *See* O.C.G.A. § 9-11-12(b); Ga. R. Unif. Sup. Ct. 5.1.

(insurer's efforts to open default and limited defense of action for at least two months were not sufficient to waive its rights to assert non-coverage).[8]

In other words, there is no requirement that an insurer reserve its rights *before* the filing of an answer on its insured's behalf. An insured who is informed sufficiently early in the litigation that there are coverage issues has an ample opportunity to reject the insurer's defense and control its own litigation. The sole, relevant question is whether a notice of non-coverage was timely.

In contrast, Georgia courts have held that prejudice to an insured is conclusively presumed, as a matter of law, either where no reservation of rights is ever given or where such reservation is made at a time when the course of the litigation has been "irrevocably fixed." *See, e.g.*, *World Harvest*, 695 S.E.2d at 8, 12 (without reserving rights, insurer defended insured for over ten months, until discovery was "almost complete," before denying coverage); *Ins. Co. of N. Am. v.*

---

[8] In this context, Georgia law is not unlike that of several other states. *See, e.g.*, *Underwriters at Lloyds v. Denali Seafoods, Inc.*, 927 F.2d 459, 463 (9th Cir. 1991) (no presumption of prejudice where denial of coverage occurred four months after insurer agreed to defend without reserving rights and twenty-nine days after answer was filed) (Washington law); *Lextron, Inc. v. Travelers Cas. & Surety Co. of Am.*, 267 F. Supp. 2d 1041, 1048 (D. Colo. 2003) (no estoppel where insurer withdrew from defense two months after assuming defense without reserving rights and four months after litigation commenced); *Fire Ins. Exchange v. Fox*, 423 N.W.2d 325, 326-27 (Mich. Ct. App. 1988) ("We hold that issuance of the reservation of rights letter only four months after initiation of the litigation reasonably put defendant on notice that his claim might not be covered under his homeowner's insurance policy.").

*Kyla, Inc.*, 388 S.E.2d 530, 532 (Ga. Ct. App. 1989) ("Notice of reservation of rights given ten and one-half months after taking charge of the defense of the action is not timely."); *Winters v. GEICO*, 209 S.E.2d 32, 33 (Ga. Ct. App. 1974) ("We conclude . . . that a notice of reservation of rights by an insurer must be both timely and sufficient, and that the filing of an answer and taking charge of a defense for a period of five months without such notice constitutes an estoppel."); *Jones v. Georgia Cas. & Surety Co.*, 78 S.E.2d 861, 863 (Ga. Ct. App. 1953) (without reserving rights, insurer took full control of defense of action, appeared in the trial of the case on behalf of its insured, filed a motion for new trial, and later dismissed the motion before refusing to pay the judgment against insured).

As articulated by the Georgia Supreme Court in *World Harvest*, the rationale supporting a finding of prejudice as a matter law under these circumstances is one of necessity:

> The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, [the insurer] *irrevocably fixed* the course of events concerning the law suit for the first 10 months. *Of necessity*, this establishes prejudice.

695 S.E.2d at 12 (citation omitted) (emphasis added). *World Harvest* must thus be understood in the context in which it arose and the decades of precedent upon which it is based. It holds that an insurer is estopped from denying coverage where the

insurer provides a defense of substantial length and substance without placing its insured on notice of the potential for non-coverage.

Moreover, as this Court has recognized, *World Harvest* did not overrule – either expressly or implicitly – the more than sixty years of precedent regarding waiver and estoppel. *Wellons*, 566 F. App'x at 822 (construing *World Harvest* as not upsetting the "long-standing Georgia law" of waiver and estoppel). As shown above, this precedent demonstrates that a reservation of rights can be "timely" and effective despite being provided *after* the filing an answer.

The District Court here dismissed such authority as applying only to situations in which default was imminent. (100–16.) The court's conclusion, however, finds no support in *World Harvest,* which did ***not*** hold that an estoppel will always lie where an insurer assumes and conducts the defense of its insured without *first* reserving its rights. Rather, the *World Harvest* Court simply held that an estoppel will lie where an insurer undertakes the defense "without reserving its rights" ***and*** where the insurer fails to provide "timely" notice of the potential for non-coverage. If a timely reservation of rights is provided, then, no estoppel will lie – just as it has always been under Georgia law.

The question is thus whether a reservation is "timely" – i.e., made before the course of litigation has been "irrevocably fixed," at which point prejudice to the insured is presumed "of necessity." The District Court, however, "collapse[d] the

distinction between a reservation of rights being 'timely' and that reservation coming before or after the 'assumption of a defense.'" (100–11.)

### 2. The actions taken by Lewis Brisbois were non-prejudicial to Citgo as a matter of undisputed fact

In reaching its conclusion that the litigation had become "irrevocably fixed" by the time Hudson sent its coverage position letter, the District Court focused on the fact that, as a general matter, defenses not raised in an answer can be waived and "responses to requests for admission can have irreversible effects on the course of litigation." (100–15.) But the undisputed facts of this case stand in stark contrast to those cases in which courts held the litigation to be "irrevocably fixed." Moreover, the District Court's contrary conclusion was based on inferences it made against Hudson, the non-movant on Citgo's motion for summary judgment.

The court ignored, for example, the fact that Citgo's answer asserted twenty-three defenses, including a defense that expressly incorporated by reference "any and all applicable affirmative defenses found within O.C.G.A. § 9-11-12 not expressly set forth" in the answer. ((71-4)–48.) Additionally, although unnecessary, Citgo expressly reserved the right to amend its pleading to assert additional defenses – a right already guaranteed it under Georgia law as a matter of course. *See* O.C.G.A. § 9-11-15(a). (*See also* (71-4)–49.) Further, with respect to its responses to Plaintiff's First Request for Admissions, Citgo denied all liability. ((71-4)–65-67.)

In short, nothing in Citgo's answer or responses to Hicks' requests for admissions irrevocably fixed Citgo's defenses in the litigation. Hudson disclaimed coverage for the Underlying Action on May 2, 2018 – just three business days after Citgo's answer was filed and responses to requests for admission were served. In that brief period, nothing had been done that could not be undone.

### 3. The actions taken by Lewis Brisbois were non-prejudicial to Citgo as a matter of law and, thus, fails to support a legal presumption of prejudice

Citgo's answer and responses to Hicks' requests for admission served to deny all liability. As such, there is also no merit to the District Court's conclusion that Lewis Brisbois' limited actions in Citgo's defense – taken before Hudson disclaimed coverage and without Hudson's knowledge or authorization – give way to a presumption of prejudice necessary to support an estoppel.

The *World Harvest* Court cited with approval the seminal case of *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 231 S.E.2d 245, 248 (Ga. Ct. App. 1976). *See World Harvest*, 695 S.E.2d at 10. In *Richmond*, the Georgia Court of Appeals held that, even where an insured refuses to consent to a defense under a reservation of rights, the insurer should "take necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced," before seeking declaratory relief. These actions – taken to *avoid* prejudice – are deemed proper, despite the insured's express lack of consent to them,

and they do not result in an estoppel to deny coverage because they "*protect the rights of the insured . . . .*"  *Id.* at 249 (emphasis added).  The *Richmond* Court contrasted such limited actions, like those taken here, with an insurer proceeding with "a complete defense of the main claim absent [the] insured's express or implied consent," which the court recognized "may well result in prejudice to an insured." *Id.* at 248.

The *Richmond* Court's approval of taking limited actions to protect an insured's interest in the absence of its consent to a reservation of rights has been applied to the circumstance present here, namely where an answer is filed prior to an insurer speaking to coverage (and, thus, prior to obtaining an insured's consent to a defense under reservation of rights).  *See Preferred Risk*, 353 S.E.2d at 592 ("Filing an answer to forestall default does not constitute assuming and conducting the defense to *insured's detriment* so as to forfeit insurer's rights.") (emphasis added) (citing *Richmond*).

As Brantley Rowlen, Citgo's lead attorney from Lewis Brisbois, testified, his firm filed an answer and served responses to requests for admission in the Underlying Action for the purpose of *avoiding a default or other prejudice* to Citgo. (76–59:14-60:3 (part of "protect[ing] the insured in every respect" was "filing an answer and answering Requests For Admissions . . . so they wouldn't be deemed admitted as a matter of law" because the "converse to that is [Citgo] being in default

with admissions deemed admitted as a matter of law").) As explained above, there is no merit to the District Court's determination that Citgo was prejudiced by these limited actions, taken to protect its interests, because all liability was denied in both Citgo's Answer and responses to Hicks' requests for admission ((71-4)–46-50, 62-67.)

As *Richmond* and *Preferred Risk* make clear, actions taken to avoid default and other prejudice to the insured are authorized even in the absence of an insured's consent to an insurer's reservation of rights, and they are non-prejudicial as a matter of law. The District Court's Order should be reversed.

### B. An Insurer's Duty To Speak To Coverage Is Tied To Notice Of A Lawsuit Against Its Insured As A Party Defendant

The District Court's conclusion that the "timeliness" of Hudson's coverage position letter should be measured from the date of Hudson's first notice of a potential claim against Citgo, as opposed to the date on which Hudson first learned of a pending suit against its insured (100–12-13), can neither be reconciled with the express language of the Policy nor Georgia law.

Under the Policy, the duty to defend is triggered by a "suit" against the "insured" for covered damages. ((1-2)–14.) "A suit is against an assured when, in a judicial proceeding to which he is a party . . . , a definable claim or contention is asserted that the *assured* has a legal liability for damage or injury to person or

property." *Simon v. Maryland Cas. Co.*, 353 F.2d 608, 612 (5th Cir. 1965) (emphasis added).[9]

Likewise, under Georgia law, "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of ***the complaint*** asserted ***against the insured***." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 646 S.E.2d 682, 685 (Ga. Ct. App. 2007) (emphasis added)*;see also Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 418 (Ga. 2012).

Under both the Policy and Georgia law, there is no duty to defend in the absence of a complaint naming the insured. With no duty to defend, there can be no duty to speak to coverage. *See Wellons,* 566 F. App'x at 826-27 (excess carrier never assumed defense of underlying action and, thus, was not required to speak to coverage); *St. Paul Fire and Marine Ins. Co. v. Children's Hosp. Nat'l Med. Ctr.*, 670 F. Supp. 393, 402 (D.D.C. 1987) ("The duty to disclaim coverage or to reserve rights is a part of the duty to defend."); *see also* 1 Insurance Claims and Disputes § 2:8 (6th ed.) ("An insurer should not be obligated to provide a reservation of rights prior to the time that it begins providing policy benefits.").

Accordingly, because an insurer has no duty to speak to coverage until it has notice of a lawsuit against its insured, the timeliness of Hudson's coverage position

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

letter must be measured against the date Hudson was first notified of a lawsuit actually naming Citgo as a party defendant, potentially triggering the duty to defend, which was April 27, 2018, at the earliest. That Hudson *could have* issued a reservation of rights prior to a suit being filed does not mean it was obligated to do so. The District Court's conclusion otherwise, (100–13), is contrary to Georgia law and cannot withstand scrutiny.

## III. THE DISTRICT COURT ERRED BY FAILING TO ADDRESS THE EFFECT OF CITGO'S ACCEPTANCE OF A DEFENSE UNDER A RESERVATION OF RIGHTS

The District Court also erred by failing, entirely, to even acknowledge Citgo's subsequent express consent to a defense under a reservation of rights or address the effect Citgo's acceptance has on its estoppel defense.

As demonstrated above, Hudson's coverage position letter was timely as a matter of Georgia law, precluding a finding of estoppel in the first instance. But it becomes more clear that Citgo suffered no prejudice from the timing of Hudson's coverage letter by the fact that, when specifically informed of Hudson's coverage position, Citgo – represented by its own independent counsel – expressly agreed to the defense subject to a full reservation of rights and even elected to engage Lewis Brisbois, who represented it in the days preceding Hudson's disclaimer.

Indeed, Hudson is unaware of a single reported Georgia decision – and Citgo presented none below – in which an insured was found to be prejudiced as a matter of law when it later *consented* to the defense, either expressly or implicitly, once

being informed of a reservation of rights.  In fact, the law is just the opposite: a subsequent agreement to a defense under a reservation of rights eviscerates any claim of estoppel.  *See Moody*, 263 S.E.2d at 496 (no estoppel to deny coverage where insureds "expressly agreed to the reservation of rights when presented with it 16 days" after an answer had been filed on their behalf); *Bowen*, 293 S.E.2d at 9 (there is "no viability in an estoppel defense," where "even assuming [the insurer] ha[d] filed an answer in the underlying tort action before securing [the insured's] signature on the nonwaiver of rights agreement, [the insured] expressly agreed to the reservation of rights when subsequently presented with it" (internal punctuation omitted)); *Wheeler*, 287 S.E.2d at 283 (same).

Even where the alleged delay in providing a reservation of rights was substantial, courts applying Georgia law have found that the insured's subsequent consent to a defense under a reservation of rights bars an estoppel defense.  In *American Family Insurance Co. v. Almassud*, 413 F. Supp. 3d 1292 (N.D. Ga. 2019), for example, the insurer had retained counsel to defend its insured and counsel was doing so through trial.  Following testimony by the insured, the insurer provided him with a reservation of rights letter on the basis that the insured had "failed to cooperate" in the insurer's investigation and defense.  *Id.* at 1298.  The insured contended that his insurer's reservation of rights was "too late – in fact, nearly two

years too late – because [the insurer] was required to raise defenses based on . . . facts when it first learned of them." *Id.* at 1302.

The district court rejected the insured's argument, explaining:

> Here, [the insured] did not object when [his insurer] offered him the reservation of rights letter. Instead, [he] allowed [the insurer] to continue to control his defense in the underlying case, and in fact, [his insurer] continues to do so to date. [The insured] thus impliedly consented to a defense under a reservation of rights, as well as the terms of the reservation. . . . [T]hese nonwaiver clauses were sufficient to protect [the insurer's] rights and avoid estoppel.

*Id.* at 1302-03 (citing *Wellons*, 556 F. App'x at 824).

In this case, Citgo's acceptance of a defense subject to a reservation of rights came far more quickly. Hudson sent its initial coverage position letter on May 2, 2018, a mere three days after the answer was filed. ((71-4)–6, 40.) Citgo subsequently accepted a defense under reservation of rights on August 21, 2018. ((71-4)–6, 81-82.) Citgo accepted Hudson's defense with full knowledge of the basis for Hudson's coverage position. Indeed, despite being presented with other options (including the continued use of independent counsel), Citgo agreed to a defense provided by Lewis Brisbois. ((71-7)–3, 5-6.) On these undisputed facts, Citgo cannot claim that it was presumptively prejudiced by Hudson's alleged defense of it during a period of three business days that elapsed between the filing of Citgo's answer and Hudson's initial coverage position letter.

Citgo's legally unsupported claim of prejudice also runs counter to the equitable underpinnings of an estoppel defense. As an initial matter, Citgo waited over seventeen months, and only after the Shooting was the subject of active litigation, to give notice to Hudson. Further, Citgo entirely failed to provide notice to Hudson of the existence of a lawsuit naming it as a party defendant or "immediately" provide Hudson with a copy of the amended complaint, and Hudson was unaware of the pendency of a lawsuit against its insured at the time it disclaimed coverage. ((71-4)–6 ¶ 14.) In situations such as this, Georgia courts refuse to apply the doctrine of estoppel where the insured's late notice deprives the insurer of sufficient time to determine whether it has a duty to defend based on the allegations of the complaint. *See Moody*, 263 S.E.2d at 496. Equity should not intervene to allow Citgo to benefit from its breaches of the Policy's Notice Conditions.

Further, to accept Citgo's contention – that even after agreeing to the defense under an express reservation of rights, Citgo *remained* conclusively prejudiced by the potential for non-coverage – is to accept that a party may knowingly and willingly enter into a relationship it already contends is prejudicial, while demanding that it be excused from the very contractual terms that gave rise to the relationship in the first instance. That is not equity; that is gamesmanship tainted by unclean hands.

If Citgo believed it had been prejudiced by Lewis Brisbois' actions, it could have rejected Hudson's offer of a defense under an express reservation of rights, forcing Hudson either to defend without reservation or to immediately file an action for declaratory judgment. *See Richmond*, 231 S.E.2d at 248. Citgo did not. As explained in *State Farm Mutual Automobile Insurance Co. v. Anderson*, 123 S.E.2d 191, 194 (Ga. Ct. App. 1961):

> In *none* of the cases . . . examined by this court is it held that when an insurer defends an action after giving the insured timely and sufficient notice that it is not waiving its right to deny liability *and the insured does not **reject** the insurer's defense under this condition*, the insurer is nevertheless estopped to deny liability for a judgment against the insured.

*Id.* (emphasis added). In short, when an insured ultimately accepts a defense under a reservation of rights, as Citgo did here, no estoppel to deny coverage will lie.

Citgo's acceptance of Hudson's defense – offered under a full and express reservation of rights – eviscerates any claim of prejudice and, thus, Citgo's estoppel defense. The District Court erred by failing to acknowledge Citgo's acceptance of a defense under a reservation of rights, which demands that the Order be reversed and remanded.

**IV.  THE DISTRICT COURT ERRED IN DETERMINING THAT HUDSON INITIALLY ASSUMED CITGO'S DEFENSE BECAUSE HUDSON DID NOT AGREE TO DEFEND AGAINST, OR EVEN KNOW ABOUT, THE LAWSUIT BEFORE IT SENT ITS COVERAGE POSITION LETTER**

A finding of an equitable estoppel in this context requires an insurer taking a specific action – *i.e.,* assuming the defense of its insured – that causes its insured to reasonably rely to its detriment that a claim will be covered.  *World Harvest*, 695 S.E.2d at 9.  Indeed, for an estoppel to arise by conduct, "[t]he conduct of the party against whom the estoppel is sought must amount to a concealment or false representation of material facts inconsistent with the position the party subsequently attempts to assert, [and] that party must intend or expect the other party to act upon his conduct[.]"  *Collins v. Grafton, Inc.,* 435 S.E.2d 37, 39 (Ga. 1993).  Accordingly, in the absence of any conduct *by Hudson* to assume Citgo's defense – and thus, necessarily, in the absence of any intent for Citgo to rely upon such conduct – no estoppel will lie.

**A.  Hudson Was Unaware Of The Pendency Of A Suit Against Citgo At The Time It Issued Its Coverage Position Letter, Precluding A Finding That It Assumed Citgo's Defense**

The District Court also failed to address the effect of Lewis Brisbois' lack of actual authority from Hudson to defend Citgo.  There is no basis for the District Court's determination that Hudson is bound by Lewis Brisbois' actions and estopped to deny coverage.  This is so because there is no evidence of any conduct by Hudson

to assume Citgo's defense at any time prior to the parties' mutual agreement in August 2018 to a defense under a reservation of rights.

The undisputed facts are that, upon being first provided with notice of the Shooting on March 21, 2018, Hudson engaged Lewis Brisbois to "make sure default not taken *while [Hudson] confirm[s] coverage*." ((71-4)–9) (emphasis added).) Materially, at that time, Citgo was not a defendant in the Underlying Action, so Hudson's instruction did not require or permit Lewis Brisbois to undertake the defense of Citgo. Further, at no time between Hudson's first notice of a potential claim on March 21, 2018, and Hudson disclaiming coverage on May 2, 2018, did Hudson ever communicate to Citgo or its representatives that it would be assuming Citgo's defense. ((87-3)–2.)

After Hudson received and reviewed the complaint in the Underlying Action and the third-party tender on behalf of W.W. Fowler, Hudson informed Lewis Brisbois on April 6, 2018 that *there was no coverage* for W.W. Fowler because it did not qualify as an additional insured under Citgo's Policy. ((71-4) – 29.) Hudson informed Lewis Brisbois that it would "be denying any obligation to defend," and because Citgo was not a party defendant at that time, Hudson terminated the limited engagement by directing Lewis Brisbois to "close this one down." (*Id.*; *see also* 76–34:18-37:17 (noting that the instruction to "close this one down" indicated to Lewis Brisbois that Hudson "may not be offering coverage to . . . Citgo Roosevelt[,]" and

that "there might not be another defense obligation from Hudson's perspective" because "*they didn't have an insured in the . . . lawsuit*") (emphasis added).)

When Lewis Brisbois later informed Hudson that an amended complaint would be filed naming Citgo, Hudson then instructed Lewis Brisbois simply to "monitor for the amended complaint." ((71-4)–29.) Brantley Rowlen, the lead attorney on the case at Lewis Brisbois, understood Hudson's instruction to mean "keep an eye on things and report back" and "wait and see when the amended complaint gets filed." (76–78:21-79:8.)

Despite this clear directive, Lewis Brisbois failed to "report back" to Hudson when Citgo was substituted as a defendant in the Underlying Action on April 12, 2018. (*See* (71-4)–5; 76–82:15-83:25.) Citgo also failed to notify Hudson of the amended complaint and the pending suit against it as a named defendant, as was required by the Policy. ((71-4)–6 ¶ 14.) Thereafter, Lewis Brisbois undertook several actions without the knowledge of, or authorization from, Hudson, including, among other things: acknowledging/waiving service of process of a complaint substituting Citgo as a party defendant, filing an answer on Citgo's behalf, and serving responses to requests for admission. ((71-4)–5; 76–20:18-23, 22:10-14, 56:11-57:2, 68:12-69:6, 92:2-11.)

Mr. Rowlen's testimony on this point was uncontroverted:

> Q: . . . Did you ever receive any written communication from Hudson with respect to what you're supposed to do with this

> particular – as far as entering a defense for the insured[,] other than what you have seen in the e-mails regarding not going into default?
>
> A:   No sir. . . . I did not receive any communication – whether oral or in writing – that said substitute the parties, file an answer, answer discovery, send your discovery, anything like that.

(76–56:11-57:1; *see also id.* at 72:7-9 ("I didn't seek permission.  I didn't have permission.  I just . . . filed the answer.").)

Thus, Hudson not only did not know Lewis Brisbois was undertaking these actions, it did not even know that a suit was pending against Citgo during the time period the District Court concluded Hudson assumed control over the defense. Hudson cannot control a defense of which it was unaware, nor be charged with an estoppel (which requires knowledge) in the absence of any conduct warranting it. Here, the District Court improperly drew legally and factually unsupported inferences favorable to the moving party in attributing Lewis Brisbois' knowledge and actions to Hudson.

## B.   *Smoot* Is Inapposite

The District Court, relying solely on *Smoot v. State Farm Mutual Automobile Insurance Co.*, 299 F.2d 525 (5th Cir. 1962), concluded that Hudson was responsible under an agency theory for the actions of Lewis Brisbois.  The court's reliance on *Smoot* is misplaced, as that case involved entirely different circumstances than those here.  In *Smoot*, it was not disputed that the insurer had assumed the defense of its

insured. *Id.* at 530. The issue presented was whether the insurer could be held liable for the "neglect or bad faith on the part of the attorney supplied by it to maintain the defense." *Id.* The holding in *Smoot* is thus premised on the existence of an agency relationship between insurer and defense counsel where it was uncontested that the insurer had retained the defense counsel to provide a defense to its insured.

Unlike in *Smoot*, Hudson did not select Lewis Brisbois to "execute its promises" to Citgo. *Id.* at 530. To the contrary, prior to Citgo's answer being filed, Hudson had demanded that Lewis Brisbois close its file and expressly limited Lewis Brisbois' authority to monitor for an amended complaint naming Hudson's insured. ((71-4)–29.) Under Georgia law, a principal is bound only by "the acts of [its] agent within the scope of his authority." O.C.G.A. § 10-6-51. As such, it would be logically inconsistent and contrary to Georgia law to find, as the District Court did, that an alleged principal (e.g., Hudson) could be bound by the actions of its purported agent (e.g., Lewis Brisbois) far outside the scope of the authority granted. The District Court speculated about Hudson's and Lewis Brisbois' relationship, and from this, improperly inferred a broader scope of authority – in favor of the moving party and against the non-movant – than the record facts support.

It is clear that, unlike in *Smoot*, Lewis Brisbois was not Hudson's agent for defending Citgo. Because Hudson was unaware of, and did not authorize, Lewis

Brisbois to assume Citgo's defense, Hudson cannot be charged with constructive knowledge or ratification of Lewis Brisbois' actions under any agency theory.

### C. In The Absence Of An Agency Relationship With Lewis Brisbois To "Execute [Hudson's] Promises" To Citgo, There Is No Estoppel Because Hudson Never Communicated To Citgo It Would Assume The Defense Of The Underlying Action

Rather than conduct any analysis of the legal effect of Lewis Brisbois' limited authority as of April 6, 2018 (i.e., merely to monitor for an amended complaint), the District Court merely stated that Hudson "fail[ed] to tie this agency law to the doctrine of estoppel[.]" (100–18.) As set forth above, this is simply incorrect. Under these facts, Hudson *could only be estopped to deny coverage* if it were bound by the conduct of Lewis Brisbois outside the express scope of Lewis Brisbois' agency.

Especially insupportable is the District Court's conclusion that "[a]ll of the concerns outlined in *World Harvest* of the 'great danger' of an insurer assuming a defense without any reservation of rights and later denying coverage are equally as present if retained counsel acted outside the scope of its authority." (100–18-19.) *World Harvest* simply does not support the District Court's logical leap here. That case is premised on the doctrine of equitable estoppel, which, in turn, requires that a party's own conduct "amount[s] to a concealment or false representation of material facts inconsistent with the position the party subsequently attempts to assert, [and] that party must intend or expect the other party to act upon his conduct[.]" *Collins*,

435 S.E.2d at 39.  In the absence of conduct by the party against whom an estoppel is to be charged, there can be no estoppel unless the party to be estopped is somehow bound by the conduct of another.

The District Court's contrary conclusion – that an insurer who did not authorize an insured's defense should still be bound by the acts taken by counsel outside the scope of its limited authority – is a results-driven determination unsupported by *World Harvest* or any other Georgia law.  An insurer should not be precluded from relying on the express terms of a contract to which its insured agreed based on the conduct of another, of which it was unaware and did not authorize.  To conclude otherwise is to disregard the very equitable underpinnings of estoppel in the first instance.

### D.     The District Court Improperly Weighed Evidence On Summary Judgment

Finally, in concluding that Hudson was charged with the unauthorized conduct of Lewis Brisbois, the District Court disregarded the evidence of record and instead relied on an undefined "framework of [a] longstanding relationship" between Hudson and Lewis Brisbois.  (100–19.)  The court fails to explain, however, how an undefined relationship supersedes express instructions and limitations on authority that, irrefutably, were understood by Hudson's purported agent.

Further, to the extent the District Court determined this alleged relationship alone vested Lewis Brisbois with authority to "execute [Hudson's] promises" to

Citgo, it necessarily weighed and disregarded conflicting evidence (e.g., the substantial evidence of Hudson's express revocation of Lewis Brisbois' authority to serve as defense counsel) to arrive at its conclusion, which is improper on summary judgment. *See Liberty Lobby,* 477 U.S. at 249 ("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Warrior Tombigbee Transp. Co.*, 695 F.2d at 1298 (district court erred in resolving factual disputes on summary judgment by weighing the evidence).

<u>**CONCLUSION**</u>

In light of the uncontroverted evidence that Hudson was entirely unaware of the actions taken by Lewis Brisbois in connection with the Underlying Action – much less, that there was a suit pending that named Citgo as a party defendant – the District Court's determination that Hudson nevertheless assumed and conducted the defense of Citgo flies in the face of law, logic, and the unrefuted evidence of record. The District Court's conclusion disregards the undisputed fact that Hudson expressly limited Lewis Brisbois' authority to that of monitoring counsel almost a week before Citgo was added as a defendant in the Underlying Action and almost three weeks before Lewis Brisbois filed Citgo's answer and served Citgo's responses to Hicks' request for admissions. These actions were taken without Hudson's knowledge or

approval, and it was error for the District Court to conclude that Hudson was estopped to deny coverage based on conduct it neither took nor authorized.

In all events, Hudson's coverage position letter – sent just three business days following the filing of Citgo's defensive pleading – was timely and, thus, effective as a matter of long-standing Georgia precedent. Georgia law does not provide that a reservation of rights is ineffective unless it is presented before a defense is undertaken, and the District Court's Order improperly limits what constitutes "timely" notice in a manner unsupported by Georgia law or the ordinary understanding of the word "timely."

Moreover, the filing of an answer and the service of denials of requests for admission as to liability are actions expressly approved of under Georgia law to *avoid prejudice* to an insured, even in circumstances in which an insured refuses to consent to a defense under a reservation of rights.

Thus, under any set of facts, this is not a circumstance, as in *World Harvest*, where the course of the litigation "[could] not be rerun." To the contrary, when presented with Hudson's coverage position, Citgo made the informed decision to accept the defense and continue on the same course, not because it had to, but because the course had not yet been run and Citgo could thus steer the case in whatever direction it chose. The District Court's Order flows from a misunderstanding of Georgia law and disregards the legal effect of Citgo's ultimate

acceptance of Hudson's defense under a reservation of rights.  Georgia law demands the Order be reversed.

Respectfully submitted, this 17th day of May 2022.

CARLTON FIELDS, P.A.

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867
Amanda D. Proctor
Georgia Bar No. 776848
1201 West Peachtree Street
Suite 3000
Atlanta, Georgia  30309
Telephone: (404) 815-3400
cfreeman@carltonfields.com
aproctor@carltonfields.com

James Parker-Flynn
Georgia Bar No. 653173
215 S. Monroe Street, Suite 500
Tallahassee, Florida 32301
Telephone: (850) 224-1585
jparker-flynn@carltonfields.com

*Counsel for Appellant Hudson Specialty Insurance Company*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies that this Principal Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this document contains 10,836 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4. The undersigned attorney also certifies that this Principal Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Principal Brief has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system, including to the following counsel of record:

| | |
|---|---|
| Michael J. Gorby | Thomas G. Sampson, II |
| Gorby Peters and Associates, LLC | Thomas Kennedy Sampson & |
| 1174 Peachtree Street, N.E. | Tompkins, LLC |
| 10th Floor, Suite 1000 | 3355 Main Street |
| Atlanta, Georgia 30361 | Atlanta, Georgia 30337 |
| *Counsel for Appellee Citgo Roosevelt, Inc.* | *Counsel for Appellee Tabitha Renee Hicks* |

This 17th day of May, 2022.

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867